IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WAYNE MANEMANN, ERROL YOUNG, and ALVIN WESTLEY, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-12-2239 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § § § | |
| Defendant. | § § | |

**MEMORANDUM AND RECOMMENDATION, AND ORDER**

Pending before the court[1] are Plaintiffs Alvin Westley ("Westley") and Errol Young's[2] ("Young") (collectively, "Plaintiffs") Motion for Partial Summary Judgment (Doc. 42) and Defendant's Motion for Summary Judgment (Doc. 46). The court has considered the motions, the responses, the evidence and objections thereto, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiffs' motion be **GRANTED IN PART AND DENIED IN PART**. and Defendant's motion be **GRANTED IN PART AND DENIED IN PART**.

## I.  Case Background

Plaintiffs, two inmates who use wheelchairs for mobility,

---

[1]      This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 29.

[2]      One of the original plaintiffs, Wayne Manemann, was released from Defendant's custody in March 2013 and was dismissed from this lawsuit in July 2013.  See Doc. 53, Def.'s Mot. to Dismiss Pl. Manemann; Doc. 59, Order Dated July 2, 2013.

filed this action against the state prison system, contending that the Wallace Pack I Unit ("Pack I Unit") in Navasota, the prison unit where they reside, lacks sufficient space and adequate accommodations for inmates in wheelchairs.[3]

## A.  Factual Background

The Pack I Unit was built in 1983.[4]  In 2001, the primary buildings of the unit, including the A2 and A4 dormitories, underwent renovations in an effort to bring them into ADA compliance.[5]

Plaintiffs reside in the A2 dormitory at the Pack I Unit.[6] The A2 dormitory houses approximately thirty inmates, all of whom have disabilities that impair their mobility.[7]  Plaintiff Westley, who previously lived in the A4 dormitory described the dormitories as mirror images of one another.[8]  Every inmate who uses a wheelchair is housed in one of these two dormitories.[9]

---

[3]     See Doc. 7, Pls.' 1st Am. Compl. pp. 1, 3-7.

[4]     Doc. 46-2, Ex. B to Def.'s Mot. for Summ. J., Robert Warren's ("Warren") Aff. ¶ 15.

[5]     Id.

[6]     Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶¶ 2, 4; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶¶ 2, 4.

[7]     Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 4; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 4.

[8]     Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶¶ 5, 6.

[9]     Doc. 42-7, Ex. 7 to Pls.' Mot. for Partial Summ. J., Def.'s Resp. to Pl. Manemann's 1st Reqs. for Admis. No. 2.

The A2 dormitory, like the A4 dormitory, is a "rectangular room[] with three rows of cubicles," and has a bathroom on one side that extends to the middle of the dormitory.[10]   The bathroom has an entrance on each end and has five sinks, two toilets with grab bars, one toilet without grab bars, two urinals, and two showers.[11] The toilets with grab bars have partitions and are at opposite ends of the bathroom near the entrances.[12]   The two showers and three of the sinks are along one side of the bathroom opposite the three toilets and two urinals.[13]

Each shower has a fixed shower head at a height of forty-eight inches, which cannot be used as a hand-held sprayer.[14]   Before Plaintiffs filed this case, the showers had two-inch pipes that ran along two walls to support the shower bench.[15]   The benches since have been replaced to remedy the clear space encroachment caused by

---

[10]     Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 6; see also Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 5.

[11]     Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶¶ 7, 15; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶¶ 6, 12.

[12]     Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 15; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 12.

[13]     Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 7; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 6.

[14]     Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 8; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 7.

[15]     See Doc. 42-4, Ex. 4 to Pls.' Mot. for Partial Summ. J., Warren's Dep. p. 41.

the supporting pipes.[16]

In order to use the shower, an inmate who uses a wheelchair transfers himself to a bench inside the shower opposite the shower head, leaving his wheelchair directly in front of the shower.[17]  The wheelchair occupies floor space used to access the toilets and urinals.[18]  Similarly, when an inmate in a wheelchair uses one of the toilets with grab bars, his wheelchair blocks an entrance to the bathroom, or, if an inmate in a wheelchair uses the toilet without grab bars, his wheelchair blocks access to the shower that is on the other side of the bathroom.[19]

The dormitories of the Pack I Unit share an outdoor recreation area that has a basketball court, a handball court, and an area with weight-lifting equipment, all of which are on concrete slabs and connected by concrete paths.[20]  The recreation yard also has a

---

[16]   See id. p. 42; Doc. 46-10, Ex. G to Def.'s Mot. for Summ. J., Photographs.

[17]   See Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶¶ 9, 13; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶¶ 8, 10.

[18]   Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 13; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 10.

[19]   Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶¶ 14, 17; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶¶ 11, 14.

[20]   See Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 18; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 19; Doc. 42-5, Ex. 5 to Pls.' Mot. for Partial Summ. J., Matthew McClarin's ("McClarin") Dep. p. 57; Doc. 42-6, Ex. 6 to Pls.' Mot. for Partial Summ. J., Ron McAndrew's ("McAndrew") Expert Report ¶ 15; Docs. 46-7 through 46-8, Ex. G to Def.'s Mot. for Summ. J., Photographs.

grass softball field surrounded by a dirt track, which has been worn into the grass by use.[21]   Toilets in the recreation area are accessible via a concrete path.[22]   Able-bodied inmates use all areas of the recreation yard and "frequently occupy[] the narrow sidewalks between the three slabs of concrete."[23]   The Pack I Unit also has a gymnasium, which has four basketball hoops, an area for playing handball, weight-lifting equipment, and an area for playing volleyball.[24]   The gymnasium has 2250 square feet in useable space.[25]

The earliest daily recreation period at the Pack I Unit is from 8:00 to 10:00 a.m.[26]   During that time, mobility-impaired inmates have the choice to recreate outdoors or in the gymnasium.[27] All other inmates only may recreate outdoors.[28]   The two other

---

[21]   See Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 19; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 20; Doc. 42-5, Ex. 5 to Pls.' Mot. for Partial Summ. J., McClarin's Dep. p. 57; Doc. 42-6, Ex. 6 to Pls.' Mot. for Partial Summ. J., McAndrew's Expert Report ¶ 15; Docs. 46-7 through 46-9, Ex. G to Def.'s Mot. for Summ. J., Photographs.

[22]   Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 18; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 19.

[23]   Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 21; see also Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 20.

[24]   See Doc. 42-9, Ex. 9 to Pls.' Mot. for Partial Summ. J., Photographs; Doc. 46-2, Ex. B to Def.'s Mot. for Summ. J., Warren's Aff. ¶ 10.

[25]   Doc. 46-2, Ex. B to Def.'s Mot. for Summ. J., Warren's Aff. ¶ 10.

[26]   See Doc. 42-5, Ex. 5 to Pls.' Mot. for Partial Summ. J., McClarin's Dep. pp. 13-16; Doc. 46-2, Ex. B to Def.'s Mot. for Summ. J., Warren's Aff. ¶ 10.

[27]   Doc. 42-5, Ex. 5 to Pls.' Mot. for Partial Summ. J., McClarin's Dep. p. 13.

[28]   Id. pp. 13-14.

recreation times, from 12:20 to 3:20 p.m. and 6:00 to 9:00 p.m., only outdoor recreation is available to all inmates.[29] The gymnasium may not be available for recreation if religious activities are scheduled on weekend mornings and is not limited to inmates with mobility issues during inclement weather.[30]

## B.  Procedural History

On July 26, 2012, Plaintiffs filed this action and, on August 16, 2012, filed an amended complaint before Defendant had filed an answer.[31] Plaintiffs alleged multiple violations of Title II of the Americans with Disabilities Act[32] ("Title II" or "ADA") and Section 504 of the Rehabilitation Act[33] ("Section 504" or "RA") based on the alleged architectural barriers.[34] In their amended complaint, Plaintiffs claim that Defendant violates the ADA Accessibility Guidelines[35] ("Guidelines") with respect to the recreational track, the cubicle entrances, the floor space for toilets, the grab bars in the bathrooms, the showers, the outside recreation yard, the

---

[29]    Id. pp. 14-15.

[30]    Id. pp. 18, 44.

[31]    See Doc. 1, Pls.' Original Compl.; Doc. 7 Pls.' 1st Am. Compl.; Doc. 8, Answer.

[32]    42 U.S.C. §§ 12131-12134.

[33]    29 U.S.C. § 794.

[34]    See Doc. 7, Pls.' 1st Am. Compl. pp. 8-14.

[35]    The Department of Justice, in conjunction with the Architectural and Transportation Barriers Compliance Board, issued these guidelines pursuant to the ADA.  See 42 U.S.C. § 12134(a); Lara v. Cinemark USA, Inc., 207 F.3d 783, 786 (5th Cir. 2000).

clear floor space in front of the sinks, the tables and chairs in the visitation room, the benches in the dayrooms, the shower spray units, the shower seats, the dayrooms, and the urinals.[36] Plaintiffs requested injunctive and declaratory relief, nominal damages, attorneys' fees, and litigation costs.[37]

Defendant filed a motion to dismiss in March 2013 to which Plaintiffs responded.[38]   The court entered a memorandum and recommendation ("M&R") on April 24, 2013, which was adopted on May 10, 2013.[39]  In the M&R, the court addressed Defendant's contention that the ADA only abrogates state sovereign immunity for conduct that actually violates the U.S. Constitution and determined that Plaintiffs had pled constitutional violations related to the use of bathroom facilities and to recreation.[40]  More significant, however, was the court's conclusion that it was not required to address that issue because the ADA claims as pled were entirely duplicative of Plaintiffs' RA claims.[41]

On the same day that the M&R was adopted, Plaintiffs timely

---

[36]    See Doc. 7 Pls.' 1st Am. Compl. pp. 9-13.

[37]    See id. pp. 1, 14-15.

[38]    See Doc. 23, Def.'s Mot. to Dismiss; Doc. 25, Def.'s Am. Mot. to Dismiss; Doc. 30, Pls.' Resp. to Def.'s Mot. to Dismiss.

[39]    See Doc. 36, M&R Dated Apr. 24, 2013; Doc. 40, Order Dated May 10, 2013.

[40]    Doc. 36, M&R pp. 4-8.

[41]    Id. pp. 8-9.

7

filed the pending motion for partial summary judgment.[42] Defendant, with leave of court, filed its pending motion for summary judgment two weeks later.[43]  The parties responded to each other's motion and objected to certain evidence submitted by the opposing party.[44]

Before addressing the pending summary judgment motions, the court entertains the parties' evidentiary objections.

## II.  Evidentiary Objections

In its response to Plaintiffs' motion, Defendant lodged two objections to Plaintiffs' evidence.  First, Defendant argues that the report of Plaintiffs' expert, Kenneth Otten ("Otten") is hearsay because it is unsworn.  Unsworn expert reports are not admissible as summary judgment evidence.  Provident Life & Accident Ins. Co. v. Goel, 274 F.3d 984, 1000 (5th Cir. 2001)(quoting 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56.14[2][c] (3d ed. 1997)); see also Dorsey v. Simon Prop. Grp., L.P., 378 F. App'x 476, 479 (5th Cir. 2010)(unpublished).  In support of their motion for partial summary judgment, Plaintiffs submitted Otten's expert report, which is signed but does not meet the requirements of an

---

[42]    See Doc. 42, Pls.' Mot. for Partial Summ. J.

[43]    See Doc. 39, Order Dated May 10, 2013; Doc. 46, Def.'s Mot. for Summ. J.

[44]    See Doc. 50, Def.'s Resp. to Pls.' Mot. for Partial Summ. J.; Doc. 60, Pls.' Objections to Def.'s Summ. J. Evid.; Doc. 61, Pls.' Resp. to Def.'s Mot. for Summ. J.

affidavit or declaration.[45]   Plaintiffs did not respond to Defendant's objection and did not remedy the evidentiary flaw when they attached the same report to its response to Defendant's summary judgment motion.   Defendant's objection is **SUSTAINED**. Otten's report is **STRICKEN** from the summary judgment record.

Second, Defendant complains that Plaintiffs cite to the 2010 ADA Standards for Accessible Design (which includes 28 C.F.R. § 35.151 and the 2004 Guidelines) in their amended complaint, even though that version is not applicable to renovations at the Pack I Unit.  The Pack I Unit underwent renovations in 2001, and Defendant argues, "the alterations are required to be in compliance with either the 1991 federal ADA Standards for Accessible Design . . . and the 1994 Texas Accessibility Standards . . . or the Uniform Federal Accessibility Standards [("UFAS")] . . . ."[46]  As noted in a subsequent section of this memorandum, the regulations do indeed require that the renovations to the Pack I Unit comply with either the 1991 Guidelines or the UFAS.   See 28 C.F.R. § 35.151(c)(1).

Even so, Defendant fails to cite the court to any summary judgment evidence to which it objects on this basis, citing instead only to Plaintiffs' First Amended Complaint.  The court therefore **OVERRULES** Defendant's evidentiary objection and notes that its

---

[45]    See Doc. 42-3, Ex. 3 to Pls.' Mot. for Partial Summ. J., Otten's Expert Report.

[46]    Doc. 50, Def.'s Resp. to Pls.' Mot. for Partial Summ. J. p. 2.

substance is more properly considered legal argument.

Plaintiffs raised one objection.  In a separate document filed contemporaneously with their response to Defendant's motion for summary judgment, Plaintiffs objected to one paragraph of the affidavit of Defendant's expert, Robert Warren ("Warren"). Paragraph fifteen of the affidavit stated:

> The Pack unit was built in 1983, but underwent major renovations of the primary buildings, including the A2 and A4 dorms in 2001 for the purposes of making the unit ADA compliant.  After the renovation, the showers in A2 and A4 had hand[-]held hoses.  However, after the inmates repeatedly ripped the hoses from the walls and were repeatedly replaced by maintenance, a decision was made to remove the hoses and replace them with nozzles 48" above the floor.[47]

Plaintiffs' objection focuses on the last two sentences regarding hand-held hoses.  Previously, at his deposition, Warren stated that the shower hoses were a safety concern because they could be used as weapons against staff and other inmates or as implements of suicide.[48]  Warren also testified that he was not aware of any inmate in any of Defendant's facilities having used a shower hose to harm himself or an officer, further stating, "I'm not aware of any shower hoses . . . ."[49]

---

[47]     Doc. 46-2, Ex. B to Def.'s Mot. for Summ. J., Warren's Aff. ¶ 15.

[48]     Doc. 62-3, Ex. 3 to Def.'s Opp'n to Pls.' Objections, Warren's Dep. p. 52.

[49]     Id. p. 53.  Defendant argues that this statement "came on the heels of Plaintiffs' inquiry about the existence of hoses at the Estelle Unit and the use of hoses to harm others, but not whether Warren had knowledge of the hoses at the Pack I Unit being removed by inmates."  Doc. 62, Def.'s Opposition to Pls.' Objections p. 3.  Although a prior question did ask about shower hoses at the Estelle Unit, the question immediately prior to the relevant testimony asked

Referring to Warren's affidavit testimony on hand-held hoses as "information regarding the alleged 'vandalism' of the hoses,"[50] Plaintiffs present several arguments in favor of striking the paragraph. Defendant provides several responsive arguments in favor of allowing all of Warren's affidavit testimony.

The court agrees with Plaintiffs that the portion of paragraph fifteen that contains Warren's comments about the past history of vandalism to shower hoses at the Pack I Unit should be stricken for one simple reason. Warren's deposition remark that he was not aware of shower hoses effectively precludes an assertion that he had personal knowledge of the vandalism. Absent an explanation of how he personally acquired the knowledge, the statements do not comply with Rule 56(c)(4), which requires that affidavit testimony "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

The last two sentences of paragraph fifteen of Warren's affidavit submitted in support of Defendant's motion for summary judgment are **STRICKEN**. Plaintiffs' objections are **SUSTAINED** to the extent explained above.

### III. Summary Judgment Motions

---

about self-harm with shower hoses at any of Defendant's facilities. <u>See</u> Doc. 62-3, Ex. 3 to Pls.' Objections, Warren's Dep. pp. 52-53.

[50]    Doc. 60, Pls.' Objections to Def.'s Summ. J. Evidence p. 2.

11

Plaintiffs move for summary judgment on three issues: 1) the showers in A2 and A4 dormitories violate the Guidelines and the UFAS; 2) Defendant denies Plaintiffs' equivalent access to bathroom facilities; and 3) Defendant denies Plaintiffs' equivalent access to outside recreation.  Defendant moves for summary judgment on all of Plaintiffs' claims based on the failure to state a claim under the ADA and RA, Defendant's entitlement to sovereign immunity, and Plaintiffs' failure to show entitlement to injunctive and declaratory relief.

## A.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. However, if the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial. Id. at 324.

**B. Analysis**

The court begins with the question of sovereign immunity and continues through the parties' arguments.

**1. Sovereign Immunity**

Defendant revisits the issue of sovereign immunity that it raised in a previous motion to dismiss. Defendant again focuses on its contention that it did not violate Plaintiffs' constitutional rights, arguing that Plaintiffs cannot produce evidence of a substantial risk of serious harm or of Defendant's deliberate indifference to such a risk.

However, Defendant fails to address the overarching conclusion reached in the court's M&R, which was that it "need not address the

13

issue of abrogation under Title II because the rights and remedies under either Section 504 or Title II are the same" in this case and the Section 504 claims are not barred by sovereign immunity.[51] Absent any argument from Defendant on this point, the court finds no reason to revisit the issue of sovereign immunity.

Defendant is not entitled to summary judgment based on sovereign immunity.

### 2.   Injunctive and Declaratory Relief

In this section of its brief, Defendant focuses primarily on the requirements for issuance of a preliminary injunction, arguing that Plaintiffs cannot satisfy any of the necessary elements. Defendant also argues that a permanent injunction is not available as it is an extraordinary remedy that is available in the prison setting only to the extent necessary correct particular violations of federal rights.  The only mention Defendant makes of declaratory relief relates to the requirement that jurisdiction be based on law other than the Declaratory Judgment Act itself.  Plaintiffs argue in response that they are not seeking a preliminary injunction and that the ADA and RA allow the imposition of an injunction as a remedy for violations.

---

[51]     Doc. 36, M&R pp. 8-9 (citing Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454-55 (5th Cir. 2005), and Durrenberger v. Tex. Dep't of Crim. Justice, 757 F. Supp.2d 640, 648 (S.D. Tex. 2010)).
     There is no dispute that Defendant accepts federal funding and, thus, waives its Eleventh Amendment immunity to RA claims.  See Doc. 42-7, Ex. 7 to Pls.' Mot. for Partial Summ. J., Def.'s Resp. to Pl. Manemann's 1st Reqs. for Admis. No. 3 (admitting that Defendant receives federal funds as defined by Section 504).

As Plaintiffs did not request a preliminary injunction and do not seek one now, the majority of Defendant's argument in this section is simply not relevant.  With regard to the issuance of a permanent injunction, Defendant's argument is premature.  Should Plaintiffs be successful on their claims, the court will consider whether a permanent injunction is appropriate and will tailor the injunction according to the applicable legal guidelines.  Finally, Defendant's motion is wholly inadequate with regard to Plaintiffs' request for a declaratory judgment.  Defendant does not discuss the substance of Plaintiffs' request, much less why such relief is unavailable in this case.  The court agrees with Defendant that declaratory judgment is not an independent ground for jurisdiction, but that is not a concern in this case.

Defendant is not entitled to summary judgment on any of Plaintiffs' requests for relief.

### 3.  Specific Architectural Elements

Defendant and Plaintiffs' motions both address the core issue of the case, whether Defendant has discriminated against Plaintiffs based on their disabilities.

Claims under the ADA and RA for discrimination against public entities require proof that: (1) Plaintiffs have qualifying disabilities; (2) they are being excluded from participation in or "being denied the benefits of services, programs, or activities for which the public entity is responsible, or [are] otherwise

discriminated against by the public entity;" and (3) the discrimination is by reason of their disability. <u>Hale v. King</u>, 642 F.3d 492, 499 (5th Cir. 2011); <u>Hainze v. Richards</u>, 207 F.3d 795, 799 (5th Cir. 2000); <u>see also</u> 42 U.S.C. §§ 12132-12133; 29 U.S.C. § 794(a); <u>Bennett-Nelson v. La. Bd. of Regents</u>, 431 F.3d 448, 455 (5th Cir. 2005); <u>O'Neil v. Tex. Dep't of Criminal Justice</u>, 804 F. Supp.2d 532, 538 (N.D. Tex. 2011).

The prohibition against discrimination requires public entities "to take reasonable measures to remove architectural and other barriers to accessibility." <u>Tenn. v. Lane</u>, 541 U.S. 509, 531 (2004)(citing 42 U.S.C. § 12131(2)); <u>see also</u> 28 C.F.R. § 35.149. The regulations specifically target correctional facilities:

> Public entities shall ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

28 C.F.R. § 35.152.

Accessibility compliance is measured against specific architectural accessibility standards. <u>See</u> 28 C.F.R. § 35.151(a)(1), (c); <u>Lane</u>, 541 U.S. at 532 (citing 28 C.F.R. 35.151). Alterations that began after July 26, 1992, but prior to September 15, 2010, must comply with either the 1991 Guidelines or the UFAS.[52]

---

[52]   The UFAS, which are located at 41 C.F.R. pt. 101-19.6, app. A, are the standards promulgated pursuant to the RA and are "nearly identical" to the Guidelines. <u>Greer v. Richardson Indep. Sch. Dist.</u>, 472 F. App'x 287, 291 n.2 (5th Cir. 2012)(unpublished). As the two are nearly identical and compliance

28 C.F.R. § 35.151(c)(1).   The language of the regulation is mandatory, indicating that the failure to comply with the applicable standards is a violation of the ADA.   See id.   The Guidelines "provide the minimum technical requirements for ADA compliance for newly constructed facilities and for alterations made to existing facilities."   Greer v. Richardson Indep. Sch. Dist., 472 F. App'x 287, 291 (5th Cir. 2012)(unpublished)(also stating that "accessibility requirements for existing facilities are less stringent and more flexible than for new facilities").

Existing facilities, which include facilities that may also be considered newly constructed or altered, are not exempt from the mandate that services, programs, and activities be "readily accessible to and usable by individuals with disabilities."   28 C.F.R. § 35.150(a); see also 28 C.F.R. § 35.104 (defining "existing facilities").   However, existing facilities may comply with the mandate by methods other than making alterations to current structures or constructing new facilities, including the reassignment of services, programs, and activities to accessible buildings.   28 C.F.R. § 35.150(b)(1).   The priority in selecting among available methods is integration to the extent possible while offering accessible services, programs, and activities.   Id.   The "touchstone" for compliance of existing structures is not

with either set of standards is acceptable, the court follows the parties' lead and cites only to the Guidelines for specific requirements.   See id.; 28 C.F.R. § 35.151(c)(1).

"technical compliance with the [Guidelines], but is instead 'program accessibility.'"   Greer, 472 F. App'x at 291.

Defendant does not dispute that it is a public entity[53] or that Plaintiffs have qualifying disabilities.  Furthermore, Defendant agrees that the alterations made to the Pack I Unit in 2001 were designed to bring the prison into ADA compliance.  Based on that admission, the court finds that Defendant's facilities must be in compliance with the 1991 Guidelines with regard to the areas addressed therein.  Where the 1991 Guidelines are silent about a particular area about which Plaintiffs complain, Defendant is entitled to the more flexible standard applicable to existing facilities.

In its motion, Defendant contends that, because its facilities comply with the 1991 Guidelines, it has not excluded Plaintiffs from participation in or denied them the benefits of its services, programs, or activities.  Defendant moves for summary judgment in its favor on the following aspects of the Pack I Unit: the outdoor recreation transfer bench; the gymnasium; the public visitation rooms; the cubicle entrances in the dormitories; the dormitory aisles and passing spaces; the dayrooms; the toilet grab bars; the shower spray units; the shower seats; the clear floor space in the bathrooms; and the outdoor recreation facilities.

---

[53]   The statute defines public entity, in part, as "any department, agency, special purpose district, or other instrumentality of a State."   42 U.S.C. § 12131(1)(B).

18

Plaintiffs, in both their motion for partial summary judgment and their response to Defendant's motion, address only the toilet grab bars, the shower spray units, the shower seats, the clear floor space in the bathrooms, and the outdoor recreation facilities.  They argue that these facilities are inaccessible to and/or unusable by Plaintiffs.

In their response to Defendant's motion, Plaintiffs conceded that the public visitation rooms, the cubicle entrances in the dormitories, the dormitory aisles,[54] and the dayrooms are compliant with the 1991 Guidelines.  Because they did not respond to Defendant's motion with regard to the outdoor recreation transfer bench and the gymnasium, the court finds that Plaintiffs have not raised a fact issue on Defendant's compliance with the 1991 Guidelines as to these particular features of the Pack I Unit.  Thus, Defendant is entitled to summary judgment on the outdoor recreation transfer bench, the gymnasium, the public visitation rooms, the cubicle entrances in the dormitories, the dormitory aisles and passing spaces, and the dayrooms.

The court now addresses the five remaining areas of contention.

### a.  Toilet Grab Bars

Grab bars of prescribed length and positioning are required in

---

[54]     Because Plaintiffs do not separately address the areas of the dormitories where inmates using wheelchairs can turn and pass each other, the court assumes that Plaintiffs' concession as to the aisles includes the turning and passing spaces.

toilet stalls.  <u>See</u> 1991 Guidelines §§ 4.17.6, 4.26.[55]  Plaintiffs take issue with the presence of one toilet, out of three, that does not have grab bars.  Defendant contends that the 1991 Guidelines do not dictate the number of accessible toilets per inmate in a prison dormitory.  Defendant's expert testified that the International Plumbing Code ("IPC") for prisons requires one toilet for every fifteen inmates and, in calculating the number of toilets, allows for substitution of half of the toilets with urinals in an all-male facility.[56]  The IPC's standards apply to a prison population without regard to whether the toilets or urinals are accessible.[57] Based on the IPC's general requirement, Defendant takes the position that two accessible toilets, plus two accessible urinals, in a dormitory that houses thirty inmates are more than sufficient to meet accessibility standards.

Plaintiffs fail to support their argument with any law requiring that the two dormitories at issue provide only accessible toilets or requiring a certain ratio of inmates to accessible toilet.  As the court reads the 1991 Guidelines, they require that only one in five toilet stalls and one urinal comply with the

---

[55]    The 1991 Guidelines are available online at http://www.ada.gov.

[56]    Doc. 46-2, Ex. B to Def.'s Mot. for Summ. J., Warren's Aff. ¶ 8; Doc. 50-7, Ex. G to Def.'s Resp. to Pls.' Mot. for Partial Summ. J., Warren's Dep. pp. 62-63.

[57]    Doc. 50-7, Ex. G to Def.'s Resp. to Pls.' Mot. for Partial Summ. J., Warren's Dep. p. 63.

accessibility standards.[58]  1991 Guidelines §§ 4.22.4, 4.22.5.

Frankly, the ADA does not purport to protect persons with disabilities from the nuisance of waiting.  The ADA only requires that Defendant provide Plaintiffs access to bathroom facilities; it does not require that all of the toilets in the bathroom be accessible.  Defendant cannot be said to violate the ADA in a situation such as this where, pursuant to Plaintiffs' logic, removal of the inaccessible toilet would bring the bathroom into compliance as fully as would installing grab bars.

Defendant is entitled to judgment as a matter of law that it does not violate the ADA and RA by providing one toilet out of three without grab bars.

### b.  Shower Spray Units

Showers must have a spray unit with a hose that is at least sixty inches long that can be used as a fixed shower head or as a hand-held sprayer.  1991 Guidelines § 4.21.6.  An exception to the requirement states that, "[i]n unmonitored facilities where vandalism is a consideration," "a fixed shower head mounted at forty-eight [inches] above the shower floor may be used in lieu of a hand-held shower head."  Id.

The parties agree that Defendant does not provide hand-held showers in the A2 and A4 dormitories.  Defendant argues two

---

[58]    The court acknowledges that these minima are likely based on the number of persons who use wheelchairs in the general population, rather than at a prison dormitory for persons with mobility issues.

concerns justify noncompliance, to wit, security and vandalism.
Defendant cites the court to no evidence in support of the first
and no competent evidence in support of the second.[59]  Plaintiffs
contend that, even if Defendant had evidence of vandalism, it would
not be entitled to the 1991 Guidelines' exception because its Pack
I Unit does not qualify as an unmonitored facility.  Defendant
counters that the inmates in the A2 and A4 dorms are allowed to
shower whenever they choose during an extended time period[60] without
a staff escort.

　　　While Defendant's reasoning has appeal, it is only argument
without any supporting evidence.  Defendant concedes that it does
not comply with the 1991 Guidelines' shower-spray-unit requirement
and fails to raise an issue of material fact on the application of
the exception.

　　　Plaintiffs are entitled to a summary judgment finding that
Defendant violates the ADA and RA in this regard.  If Defendant
submits, with its objections, competent evidence demonstrating
entitlement to the exception for vandalism, the court will
reconsider this decision.

---

[59]　As discussed in a prior section of this memorandum, the court struck
Warren's testimony about vandalism as incompetent summary judgment evidence
because he did not affirm that the information was personal knowledge.

[60]　Defendant's expert stated that the showers were available twenty-four
hours a day.  Doc. 46-2, Ex. B to Def.'s Mot. for Summ. J., Warren's Aff. ¶ 8.
However, Defendant's brief states that the showers are available from 7:45 a.m.
to 10:00 p.m.  Doc. 46, Def.'s Mot. for Summ. J. p. 13 (citing Doc. 48-4, Ex. L
to Def.'s Mot. for Summ. J., Pl. Westley's Dep. pp. 64-65).  The copies of
Plaintiff Westley's deposition that are in the record are each missing page 65.
See id.

### c.  Shower Seats

The 1991 Guidelines set standards for shower size and clear floor space.  <u>See</u> 1991 Guidelines § 4.21.2.  Plaintiffs argue, in their motion, that the showers are inaccessible because a two-inch pipe, which supports the seat in each shower, encroaches on the required clear floor space.  Defendant presents evidence that the shower seats have been replaced[61] and contends that the showers no longer violate the 1991 Guidelines.

Plaintiffs do not counter Defendant's evidence.  In fact, Plaintiff Young indicated that he has no complaint about the new shower benches, and Plaintiff Westley implicitly acknowledged the changes.[62]  Defendant's renovations resolve the issue and render it moot.  Summary judgment should be granted in Defendant's favor on the shower seats.

### d.  Clear Floor Space in Bathrooms

The 1991 Guidelines contain standards for clear floor space for urinals, lavatories and mirrors, and other bathroom fixtures.  <u>See, e.g.,</u> 1991 Guidelines §§ 4.18.3, 4.19.3, 4.23.3, 4.24.5.  The 1991 Guidelines require that the accessible fixtures and controls in a bathroom be on an accessible route and allows the accessible route to overlap with the clear floor spaces at fixtures and

---

[61]      <u>See, e.g.,</u> Doc. 42-4, Ex. 4 to Pls.' Mot. for Partial Summ. J., Warren's Dep. p. 42; Doc. 46-10, Ex. G to Def.'s Mot. for Summ. J., Photographs.

[62]      <u>See</u> Doc. 48-3, Ex. K to Def.'s Mot. for Summ. J., Pl. Young's Dep. p. 24; Doc. 48-4, Ex. L to Def.'s Mot. for Summ. J., Pl. Westley's Dep. p. 52.

controls.   1991 Guidelines § 4.23.3.

Plaintiffs do not contend that Defendant fails to comply with any clear-floor-space provision of the 1991 Guidelines and, in fact, concede that Defendant does meet the minimum requirements. But they argue that Defendant does not provide them with equal access to bathroom facilities because the bathrooms are "very small and cramped."[63]   The essence of Plaintiffs' complaint is that a wheelchair may block the path through the bathroom while an inmate who uses a wheelchair is showering or using one of the toilets.

Plaintiffs' argument is essentially a reprise of their argument about the one toilet without grab bars.  As stated in the prior discussion, the necessity of waiting does not make the bathroom inaccessible or unusable.  Moreover, the evidence suggests that waiting is an infrequent occurrence.   The bathroom has two entrances, and, when a wheelchair impedes the path from one direction, an inmate in a wheelchair need only enter through the other doorway.  Plaintiff Westley testified that, if he did not want to wait, he could go to the other entrance.[64]   He added, referring one of the entrances, "There's usually not a waiting line."[65]   As to the other entrance, "There's really nobody

---

[63]   Doc. 42, Pls.' Mot. for Summ. J. p. 18.

[64]   Doc. 50-9, Ex. I to Def.'s Resp. to Pls.' Mot. for Partial Summ. J., Pl. Westley's Dep. p. 71.

[65]   Id.

waiting."[66]   Moreover, no evidence states that able-bodied inmates are not also subject to waiting on occasion.

Plaintiffs cast their complaint in terms of "equal access" to the bathroom facilities.   As legal support, Plaintiffs cite the title of Title 42, Chapter 126 of the U.S. Code ("Equal Opportunity for Individuals with Disabilities"), the stated purpose of the act ("to assure equality of opportunity [and] full participation"), a remark in the dissent in a Fifth Circuit case ("the ADA mandates equal access to governmental service . . ."), and an Eleventh Circuit case restating the purpose of the ADA ("to place those with disabilities on an equal footing").[67]   The court does not read any of these sources as imposing a consideration above and beyond the architectural requirements in the 1991 Guidelines.   Regardless, no reasonable jury could find that Defendant discriminates against Plaintiffs on the basis of infrequent traffic jams in the bathrooms caused by limited floor space.

The court should grant Defendant's summary judgment motion with regard to clear floor space in the bathroom.

### e.  Outdoor Recreation Facilities

Plaintiffs do not cite to any provision of the 1991 Guidelines that address outdoor recreation yards, and the court found none.

---

[66]     Id.

[67]     Doc. 42, Pls.' Mot. for Partial Summ. J. pp. 17-18 (citing 42 U.S.C. ch. 126, 42 U.S.C. § 12101(a)(7), Frame v. City of Arlington, 657 F.3d 215, 242 (5th Cir. 2011)(Jolly, J., dissenting), Kornbalu v. Dade Cnty., 86 F.3d 193, 194 (11th Cir. 1996)).

25

Defendant represents that the 1991 Guidelines are silent on any standards related to sports facilities or other outdoor recreational areas. Plaintiffs' major complaints are that the accessible areas of the recreation yard are crowded with able-bodied inmates and that they cannot access or use the track that other inmates have worn into the grass surrounding the yard. Plaintiffs propose that Defendant provide a separate outdoor recreation period only for inmates with mobility issues and pave the improvised track. Defendant argues that allowing inmates with mobility issues the opportunity to use the gymnasium each morning satisfies the ADA.

Because the 1991 Guidelines are silent on the issue of outdoor recreation, the court finds that this issue is covered by the regulations for existing facilities. Therefore, the recreation program must be readily accessible to and usable by the inmates who use wheelchairs. See 28 C.F.R. § 35.150(a). The question for ADA purposes is whether Defendant's recreation facilities and schedule facilitate accessibility in the most integrated setting possible. See 28 C.F.R. § 35.150.

Defendant acknowledges that the recreation yard may be crowded with able-bodied inmates during the times that Plaintiffs are also trying to use the facilities.[68]   Defendant does not dispute

---

[68]    See Doc. 42-5, Ex. 5 to Pls.' Mot. for Partial Summ. J., McClarin's Dep. pp. 71-72.

Plaintiffs' assertions that they do not have meaningful access to the basketball and handball courts because it is difficult for them to play those sports with able-bodied inmates; nor does Defendant dispute that Plaintiffs' access to the dirt track and the softball field is significantly hindered.

The evidence reveals that, although the courts and weight-lifting equipment are physically accessible, the areas are occupied by able-bodied inmates, who also frequently occupy the sidewalks between the concrete slabs.[69]   The Pack I Unit has a maximum capacity of 1,157, only sixty or less of whom are mobility-impaired inmates.[70]  Even with multiple recreation times, work assignments, and other programming, the potential is great that the able-bodied inmates will dominate the recreation yard.

Plaintiffs are not able to use the dirt track because their wheelchairs may become stuck and because no sidewalk leads to the path.[71]  Ultimately, Plaintiffs assert that they get no exercise when they go to outside recreation.[72]

---

[69]    See Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 20; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 21.

[70]    Doc. 42-5, Ex. 5 to Pls.' Mot. for Partial Summ. J., McClarin's Dep. p. 45.

[71]    See Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 19; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 20.

[72]    See Doc. 42-1, Ex. 1 to Pls.' Mot. for Partial Summ. J., Pl. Westley's Decl. ¶ 20; Doc. 42-2, Ex. 2 to Pls.' Mot. for Partial Summ. J., Pl. Young's Decl. ¶ 21.

Defendant contends that it complies with the accessibility mandate by reassigning two hours of outdoor recreation to the gymnasium for inmates with mobility issues. Assignment of a program to an accessible area may satisfy the ADA; however, in this case, that determination cannot be made as a matter of law. Without a doubt, there is a qualitative difference between indoor and outdoor recreation in general. The evidence in this case indicates that the gymnasium and the recreation yard differ in square footage and in opportunities. Also, indoor recreation is not available every day and is not always limited to inmates with mobility impairments.

A reasonable jury could find in favor of either party on the question whether the recreation programming is accessible to and usable by individuals with disabilities. Therefore, summary judgment should be denied on this alleged violation. If this memorandum and recommendation is adopted in its entirety, whether Defendant violates the ADA by denying Plaintiffs access to its recreation programming will be the only remaining issue for trial.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiffs' motion for summary judgment be **GRANTED IN PART AND DENIED IN PART** and Defendant's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**.

The Clerk shall send copies of this Memorandum and

28

Recommendation and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 4th day of February, 2014.

Nancy K. Johnson
United States Magistrate Judge